## ATTACHMENT A
### Statement of Facts

*The United States and the Defendant, Jesus Coca, stipulate and agree that if this case proceeded to trial, the United States would prove the facts set forth below beyond a reasonable doubt. They further stipulate and agree that these are not all of the facts that the United States would prove if this case proceeded to trial.*

On December 3, 2014, a 14-year-old female (hereinafter "Victim 1") reported to her school counselor in Hawthorne, California that the Defendant, **JESUS COCA**, was sexually abusing her. The Hawthorne police responded to interview Victim 1 on the same day. During the interview with Hawthorne police officers, Victim 1 reported that **JESUS COCA** had been sexually abusing her since she was ten years old.

During subsequent interviews of Victim 1 by a trained child forensic interviewer in December 2014 and April 2015, Victim 1 reported that **JESUS COCA** first sexually touched her in approximately 2010 and first engaged in sexual intercourse with her in approximately 2012 in Maryland. Victim 1 reported that **JESUS COCA** engaged in sexual intercourse with Victim 1 on numerous occasions between 2012 and 2014.

From at least March 2012 through March 2013, **JESUS COCA** lived in Lexington Park, Maryland. For at least half of that time period, Victim 1 lived with **Caroline Coca** outside of Maryland. On more than one occasion between summer 2012 and early 2013, **JESUS COCA** directed **Caroline Coca** to perform oral sex on Victim 1 while **JESUS COCA** watched a live transmission of the act on his cellular telephone over FaceTime (a program that allows live video chats over iPhones). During the same time period, **JESUS COCA** engaged in FaceTime chats with Victim 1 in which **JESUS COCA** directed Victim 1 to touch her vagina in a sexually explicit manner and expose her vagina to the camera. **JESUS COCA** used his cellular phone to screen capture numerous images of the live transmissions of Victim 1 engaged in sexually explicit conduct over FaceTime. **JESUS COCA** also distributed the screen captures of Victim 1 engaged in sexually explicit conduct to **Caroline Coca** on numerous occasions.

The live transmission of video of sexually explicit acts to **JESUS COCA**, as well as the distribution of screen captures of images of those acts by **JESUS COCA** constituted the transmission of visual depictions of sexually explicit conduct using any means or facility of interstate commerce or in or affecting interstate commerce. Specifically, the visual depictions were transmitted between Maryland and another state using a cellular communications network.

On December 3, 2014, Hawthorne, California police officers executed a search warrant at **JESUS COCA's** residence. A forensic analysis of computer hard drives seized from the residence revealed iPhone backups for cellular phones belonging to **JESUS COCA** and **Caroline Coca**. The backups for the cellular phones of **JESUS COCA** and **Caroline Coca** contained numerous text messages between them regarding the sexual abuse and exploitation of Victim 1.

The following is an example of one of the conversations over text message between **JESUS COCA** and **Caroline Coca** on August 15, 2012. Victim 1 had just turned 12 years old at the time of these text messages and at the time of live transmission of images of Victim 1 engaged in sexually explicit conduct as described below.

**Caroline Coca:** How was your ft with [Victim 1] last night.. What did she show you?

**JESUS COCA:** She showed me her pussy and ass

\* \* \*

**JESUS COCA:** So when she showed me her pussy she spread it and she was wet from you playing with her

**Caroline Coca:** Oh Yeah?

**Caroline Coca:** I knew she would do more if I wasn't in the room

**Caroline Coca:** She took off her pants and under wear?

**JESUS COCA:** Yes

**JESUS COCA:** Want to see?

**Caroline Coca:** Did you ask her to touch herself?

[**JESUS COCA** then sent **Caroline Coca** IMG_4196, a close up FaceTime screenshot of Victim 1's vagina with her fingers spreading it open. **JESUS COCA**'s face is visible in the upper left corner of the FaceTime screen shot.]

**JESUS COCA:** She was wet you can see it

**JESUS COCA:** You like that one?

**Caroline Coca:** Yeah it looks good

**Caroline Coca:** I told you she was twitching when I touched her

\* \* \*

**JESUS COCA:** You want to see her playing with herself?

[**JESUS COCA** then sent **Caroline Coca** IMG_8854, a FaceTime screenshot in which Victim 1 is lying down with the part of her face visible and her fingers inserted in her vagina. **JESUS COCA**'s face is visible in the FaceTime screenshot in the lower left-hand corner.]

From at least July 2012 through at least November 2012, **JESUS COCA** and **Caroline Coca** engaged in numerous additional text conversations similar to the one detailed above regarding the sexual abuse and exploitation of Victim 1. During that timeframe, **JESUS COCA** directed Victim 1 to engage in sexually explicit conduct while **JESUS COCA** watched over

FaceTime on at least three additional occasions in October and November 2012 that **JESUS COCA** captured with screenshots from FaceTime sessions. **Caroline Coca** provided Victim 1 access to **Caroline Coca's** cellular phone and encouraged Victim 1 to engage in these FaceTime sessions with **JESUS COCA** in which **Caroline Coca** knew that **JESUS COCA** would direct Victim 1 to engage in sexually explicit conduct.

At all relevant times during the events described above, Victim 1 was under 18 years old and under the care, custody, or control of **JESUS COCA**.

\* \* \*

I have read this Statement of Facts and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. I do not wish to change any part of it.

3/30/16
Date

_____
Jesus Coca

I am Jesus Coca's attorney. I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is an informed and voluntary one.

3/30/16
Date

_____
Christopher C. Nieto, Esq.